UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL D 'ANDREA,<br><br>        Plaintiff,<br><br>v.<br><br>SPRINGFIELD COLLEGE,<br><br>        Defendant. | CIVIL ACTION NO. |

## COMPLAINT AND JURY DEMAND

### Parties

1.  The Plaintiff, Michael D'Andrea (hereinafter referred to as "Dr. D'Andrea" or "Plaintiff"), is a natural person with a residential address of 95 Ingersoll, Springfield, Hampden County, Massachusetts.

2.  The Defendant, Springfield College, is a private educational institution located at 263 Alden Street, Springfield, Hampden County, Massachusetts.

### Jurisdiction

3.  This Court has jurisdiction over the federal claims set forth herein, pursuant to 28 U.S.C. §§ 1331, 1332 and otherwise. There are federal questions of law and the amount in controversy is in excess of $75,000.00. The Plaintiffs' federal claims are brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

4.  This Court has supplemental jurisdiction over the state claims set forth herein, pursuant to 28 U.S.C. § 1367 and otherwise. The Plaintiffs' state claims are brought under Massachusetts General Laws, chapter 151B.

## Venue

5.  This Court serves as the proper venue where the facts giving rise to the Plaintiffs' claims set forth herein occurred in Hampden County, Massachusetts.

## Facts

6.  Dr. D'Andrea is an academic having a Bachelor's degree in Psychology, a Master's degree in Educational Counseling and a Doctorate degree in Human Development Counseling.

7.  The Plaintiff has worked for over forty (40) years in the field of Counseling and Human Development as a faculty member at numerous universities and colleges, and during that time, he has been published over 200 times on a variety of multiculturalism topics.

8.  Dr. D'Andrea is a zealous advocate for the progress of African-Americans and racial justice in American society.

9.  In or about August of 2018, Dr. D'Andrea began working for the Defendant, as the Director of Springfield College's School Counseling Program ("Program").

10. As the Director of the Program, Dr. D'Andrea was responsible for recruiting students, forming an advisory committee of school counselors, maintaining and assessing applicant qualifications for admission, teaching three (3) graduate courses and advising students as needed.

11. From the beginning, Dr. D'Andrea developed a very strong rapport and friendship with his supervisor, Dr. Allison Cumming-McCann who is the Department Chair of Springfield College's Counseling Department as well as a professor of Counseling.

12.     Dr. D'Andrea and Dr. Cumming-McCann's friendship and professional discourse included dinners and frequent social meetings outside of Springfield College.

13.     Dr. D'Andrea performed his job responsibilities well throughout the course of his employment with Springfield College.

14.     Dr. D'Andrea received his 2018-2019 Performance Review, which was conducted by Dr. Cumming-McCann, in or around June of 2019 and received a meets and/or exceeds expectations in all categories.

15.     The 2018-2019 Performance Review included documentation of outstanding performance in three domains that are assessed by anonymous student course evaluations.

16.     In or about the fall of 2019, Dr. D'Andrea, while in one of hiss classes, had an African-America student "J.A." share with him various negative and racially charged experiences he was having as a student of Springfield College.

17.     J.A. stated to  Dr. D 'Andrea, that he felt that all of his concerns, struggle, and efforts to better his own life and other African Americans life's were going unappreciated and even completely unnoticed by some members of the Springfield College faculty.

18.     In J.A.'s opinion, and Dr. D 'Andrea's as well, his negative experiences were reflections of racial insensitivities and covert forms of racism that he had suffered because of his interactions with both students and some faculty members at Springfield College.

19.     Dr. D'Andrea determined that J.A. was being very genuine in these remarks that he was feeling dejected and unwanted at Springfield College.

20.     Dr. D'Andrea felt it was his responsibility to be an ally to J.A. and bring J.A.'s complaints of racism at Springfield College forward.

21.     The following day, Dr. D'Andrea brought a complaint of racism on behalf of J.A. to Dr. Cumming-McCann.

22.     Dr. D'Andrea and attempted to discuss appropriate strategies to support this student and increase other students' awareness and understanding of the various forms of white racism commonly manifested in our society, and at times at Springfield College.

23.     Dr. Cumming-McCann scoffed and dismissed J.A.'s concerns stating that they "ha[d] lived with these things throughout [their] entire life." Dr. Cumming-McCann proceeded to turn her back to Dr. D'Andrea and refused to discuss the matter further.

24.      Dr. D'Andrea made a comment that ***Dr. Cumming-McCann's response was an unfortunate example of white privilege as it reflected the insensitivity and disrespect that many African-Americans experience from white individuals*** who are not aware of the diverse ways that such comments adversely affect human development.

25.     Dr. Cumming-McCann scoffed and became very angry and defensive; she then stood up and moved to a desk in her office physically distinct from the conversation.

26.     Unfortunately, due to this conversation Dr. D'Andrea and Dr. Cumming-McCann's relationship changed dramatically, wherein Dr. Cummings-McCann began to retaliate against the Plaintiff.

27.     At the end of the 2019-2020 school year, Dr. D'Andrea submitted detailed reports to Dr. Cumming-McCann, as required by the Springfield College's Faculty Handbook ("Handbook"), describing the numerous tasks Dr. D'Andrea had accomplished in his role as the Director of the Program.

28.      Shortly after this, Dr. D 'Andrea provided documentation to Dr. Cumming-McCann regarding the numerous students he had successfully recruited to apply to the Program.

4

29.     Dr. D 'Andrea's report included detailed summaries of students' positive assessment of his teaching ability in the courses he was assigned during the 2019-2020 year period.

30.     Dr. Allison Cumming-McCann failed to provide Dr. D'Andrea with any immediate feedback regarding these reports, unlike she had in prior years.

31.     In or about early May of 2020, Dr. D'Andrea learned for the first time of many alleged complaints made by Springfield College students concerning his job performance. Dr. D'Andrea has made multiple requests to see these complaints, however to date Plaintiff has never received a single copy of any of these alleged complaints.

32.     In further retaliation, and around this same time in May of 2020, Dr. Cumming-McCann approached Dr. Davis-Delano seeking to have her evaluate Dr. D 'Andrea's competence as the Director of the Program for the 2019 through 2020 school year.

33.     Dr. Davis-Delano complied with this request from Dr. Cummings-McCann; however, the evaluation violated relevant provisions of Article 7 of the Handbook.[1]

34.     On or about June 23, 2020, again without explanation, Dr. Cumming-McCann issued Dr. D'Andrea a performance review for the 2019 through 2020 school year wherein she stated Dr. D'Andrea had not met Springfield College's standard of teaching and student advising. She then made a written recommendation that Dr. D 'Andrea's position, as the Director of the Program not be renewed.

35.     Dr. D'Andrea made several requests to meet with Dr. Davis-Delano and Dr. Cumming-McCann to discuss the negative recommendation they had given him due to the significant implications it could have on Dr. D 'Andrea's upcoming annual self-assessment evaluation.

---

[1] "Faculty members must be aware of the evaluative criteria and the evaluation process, and must seek to meet the expected standards of Springfield College… Evaluation must be based on clear criteria. The criteria include both general and individualized expectations of each faculty member…" Handbook, Section III, Article 7, Subsection A, Page 11.

36.     Dr. Cumming-McCann informed Dr. D'Andrea that no such meeting would take place until after his annual performance review was completed.

37.     On or about June 27, 2020, Fran Vecchiolla, Dean of the School Social Work and Behavioral Sciences, met with Dr. D'Andrea and informed him that she did not agree with Dr. Cumming-McCann's negative review of his performance.

38.     The Handbook required Dr. Cumming-McCann's attendance at this meeting[2]; however, she was not in attendance.

39.     On or about June 28, 2020, Dean Vecchiolla made a final determination that Dr. D'Andrea was in fact meeting Springfield College's expectations for teaching and student advising.

40.     Dean Vecchiolla also scheduled a meeting between her, Dr. Cumming-McCann and Dr. D'Andrea in order to discuss his performance review. The meeting was to take place on June 29, 2020.

41.     Dr. Cumming-McCann disregarded the Dean's instructions and the Handbook once again, and failed to appear for the scheduled meeting.

42.     Nevertheless, at this meeting, Dean Vecchiolla informed Dr. D'Andrea that she was overriding Dr. Allison Cumming-McCann's negative review of his performance and changing his evaluation to "meets expectations."

43.     In or about July of 2020, Dean Vecchiolla retired and Dr. Wesley Church assumed her position as the Dean of the School of Social Work and Behavioral Sciences.

44.     On or about July 14, 2020, Dean Church called a Zoom meeting between him, Dr. Cumming-McCann and Dr. D'Andrea wherein he announced that, after consulting with

---

[2] "The school dean finalizes the faculty member's evaluation and workplan either by approving these documents as recommended by the department chair, or *by meeting with the department chair and the faculty member* to discuss their concern." Handbook, Section III, Article 7, Subsection C, Paragraph 5, Page 12.

6

Dr. Cumming-McCann, he had decided to demote Dr. D'Andrea from the position of Director of the Program to associate professor of counseling.

45.     As an associate professor of counseling, Dean Church informed Dr. D'Andrea that based upon his consultation with Dr. Cumming-McCann; he had decided to change Dr. D 'Andrea's course load from three (3) courses to four (4) courses each semester.

46.     Dr. D'Andrea expressed his concern to Dean Church that he believed this change in workload, which was recommended by Dr. Cumming-McCann, was retaliatory in nature.

47.     Dean Church stated that this change was not punitive and merely an effort to enable Dr. D'Andrea more time to "pursue [his] scholarly endeavors," and an opportunity "to continue to pursue his expertise and nationally respected accomplishments in professional publications."

48.     Shortly thereafter, Dr. D'Andrea requested that Dean Church place a letter in his personnel file explaining these changes to his career and his rationale behind them. Dean Church verbally agreed to this request, however no such letter was ever placed in Dr. D 'Andrea's personnel file.

49.     In or around August of 2020, Dr. D'Andrea again reached out to Dean Church, requesting that a letter explaining the changes to his position and the rationale behind them be placed into his personnel file. Nevertheless, again, no such letter was ever placed in Dr. D'Andrea's personnel file.

50.     It is well accepted in the academic profession that there is little, if any, time to complete, submit and publish professional articles if one is to effectively advise students and teach four (4) courses in both the fall and spring semesters. Nevertheless, Dr. D'Andrea was able

to complete four (4) articles, based on "institutional racism," which were published during this time period.

51.     In or about July/August of 2020, and as required by the Handbook, Dr. D'Andrea filed two (2) formal grievances with Springfield College's Faculty Grievance Committee against Dr. Cumming-McCann and Dr. Davis-Delano for their violations of the Evaluation and Academic Freedom policies contained in the Handbook.[3]

52.     In or about August of 2020, Springfield College's Faculty Grievance Committee dismissed Dr. D'Andrea's grievances outright without a hearing, denying the Plaintiff an opportunity to be heard, and never suggesting any further recourses.

53.     In or about September of 2020, Dr. Cumming-McCann announced that she would be sitting in on one (1) of Dr. D'Andrea's classes to evaluate his performance. Something that she had never done in the past.

54.     In or about October of 2020, Dr. D'Andrea had two (2) symposiums discussing the racial biases of the Massachusetts Test for Educational License ("MTEL"), and the failure of Springfield College's administration to not effectively advocate for a change in in the MTEL or seek an alternative to the MTEL. Mary Beth-Cooper, the President of Springfield College, attended one of these symposiums.

55.     Furthermore, in or about October of 2020, members of faculty and students participated in a weeklong series of social justice workshops at Springfield College.

56.     The following week, Dr. D'Andrea received an invitation from one of the workshops organizers to attend a private meeting with several African American students. The purpose

---

[3] "A grievance is an alleged violation of established College policies, guidelines, or procedures as set forth in the Faculty Handbook, or a faculty member's claim that such policies, guidelines, or procedures have been incorrectly or inconsistently interpreted or implemented by an administrator to affect the faculty member's role, status, or employment…" Handbook, Section III, Article 13, Subsection A, Page 32.

of the meeting was to discuss the affects that institutional racism was having on them as students of Springfield College. During this meeting, one student was seeking support from other African American students to vandalize Springfield College property, the purpose behind this was to show their frustration with experiencing racism at Springfield College. Dr. D'Andrea took the time to discuss with these students their plans and successfully suggested other nonviolent alternative ways to achieve their goals.

57.   In or about October of 2020, Dr. Cumming-McCann announced that she planned to sit in on one of Dr. D'Andrea's classes again to evaluate his performance.

58.   In or about October of 2020, Dr. D'Andrea arranged for Christopher Hakala, Director of Center for Excellence in Teaching, Learning and Scholarship/Professor of Psychology, to sit in on one of his classes to evaluate Dr. D'Andrea's effectiveness as a teacher. Dr. Hakala's assessment was significantly more positive than Dr. Allison Cumming-McCann's evaluation.

59.   For this reason, Dr. D'Andrea made several requests to have an alternate faculty member sit in to evaluate his courses; however, Dr. Cumming-McCann denied all of these requests.

60.   In or about November of 2020, and after repeated requests by Dr. D'Andrea to meet and discuss his concerns about Dr. Allison Cumming-McCann's numerous violations of the Handbook, Dr. Allison Cumming-McCann reluctantly agreed to meet with Jonathan Howell, Human Resource Representative, and Dr. D'Andrea.

61.   However, at the beginning of the meeting, Mr. Howell informed Dr. D'Andrea that they would not address any of his past concerns and would only focus on ways to improve his professional relationship with Dr. Allison Cumming-McCann from that point forward.

During that meeting, Dr. Allison Cumming-McCann and Dr. D'Andrea agreed to address any future concerns they had with each other either in person or via email.

62.     On or about December 1, 2020, Dr. D'Andrea submitted detailed documentation for what is referred to as "mid probationary tenure materials" as required by the Handbook.

63.     On or about December 23, 2020, Dr. D'Andrea received a letter from Provost and Vice President for Academic Affairs, Martha Potvin, notifying him that his contract with the Defendant would only be renewed through December 31, 2021.

64.     When Dr. D'Andrea asked Dr. Potvin why his contract was not being renewed, she informed him that, on December 9, 2020, Dean Church and Dr. Allison Cumming-McCann had submitted a five (5)-page memorandum ("Memo") to her, wherein they recommended that his contract with Springfield College not be renewed on December 31, 2020. Dr. Potvin indicated that her decision was based solely upon the Memo.

65.     While the Memo contained numerous unsubstantiated and baseless reasons for not renewing Dr. D 'Andrea's contract with Springfield College, the majority of those reasons had never been brought to Dr. D 'Andrea's attention nor discussed with him at any point.

66.     The Memo contained only references to approximately eighty (80) vague complaints, concerns and/or reports about Dr. D 'Andrea's teaching ability and methods. However, the Plaintiff made numerous requests to the Defendant to see the complaints, but the Defendants refused same. This refusal was a breach of numerous policies substantiated in the Handbook, under Section III, Article 9.

67.     In or about February of 2021, Dr. D'Andrea requested a complete copy of his personnel file. The personnel file did not contain any evidence of the alleged complaints, concerns and/or reports referenced in the Memo recommending Dr. D 'Andrea's termination.

68.     In or about April of 2021, Dr. D'Andrea made another formal request for copies of the complaints, concerns and/or reports allegedly filed against him. To date, Dr. D'Andrea has not received a response to this request.

69.     Although Dr. D'Andrea had previously taught summer courses, in or about April of 2021, Dr. Allison Cumming-McCann notified him that she would be teaching the summer 2021 courses instead.

70.      Dr. D'Andrea has suffered and continues to suffer from lost wages, emotional distress and humiliation as a result of the retaliation, and the Defendant's knowing, and willfully repeated failure to remedy the situation.

71.     The above-mentioned conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, and M.G.L. c. 151B.


## CAUSES OF ACTION

### COUNT I

### (Violation of Title VII, 42 U.S.C., § 2000e-3(a).

72.     Paragraphs 1-64 are realleged and incorporated by reference herein as if set forth in full.

73.     Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e-3(a).

74.     The Defendant and the relevant employees of the Defendant at all relevant times have acted as the authorized agents of the Defendant with respect to Plaintiff's employment.

75.     The Defendant has deliberately and willfully discriminated against Plaintiff in the terms and conditions of his employment, in retaliation for having opposed practices made

unlawful under Title VII in which he assisted students and other persons of color in proceeding under Title VII and policies promulgated in accordance therewith.

76.     As a direct and proximate result of defendants' violations of Title VII, plaintiff has suffered, and continues to suffer, damages, including but not limited to, lost wages, emotional distress, loss of reputation, and lost opportunity for advancement of his status and earning power.

**COUNT II**

**Violation of M.G.L. c. 151B, § 4(4)**

77.     Paragraphs 1-69 are realleged and incorporated by reference herein as if set forth in full.

78.     Defendants are "persons" and/or "employers" within the meaning of M.G.L. c. 151B, § 4(4).

79.     Defendant's actions as alleged above were undertaken by them deliberately and willfully with the motive of retaliating against Plaintiff because he assisted students and other persons of color in bringing their complaints of race/national origin discrimination.

80.     Accordingly, Defendants have discriminated and retaliated against Plaintiff because he opposed practices forbidden under c. 151B and because he assisted an African-American student in proceeding under c. 151B and policies promulgated in accordance therewith.

81.     As a direct and proximate result of defendants' violations of M.G.L. c. 151B, § 4(4), plaintiff has suffered, and continues to suffer, damages, including but not limited to, lost wages, emotional distress, loss of reputation, and lost opportunity for advancement of his status and earning power.

WHEREFORE, the Plaintiff, Michael D'Andrea, respectfully requests judgment against the Defendant, Springfield College, and for all damages available pursuant to Title VII and M.G.L. c. 151B.

Respectfully Submitted,

The Plaintiff
Michael D'Andrea
By His Attorney

_____                          Dated: November 7, 2022
DANIEL J. O'CONNELL, ESQ.
BBO No. 550633
O'Connell & Plumb, P.C.
75 Market Place
Springfield, Massachusetts 01103
Telephone No. (413) 733-9111
Facsimile No. (413) 733-9888
Email: doconnell@ocpllaw.com

## CERTIFICATE OF SERVICE

I, Daniel J. O'Connell, Esq., hereby certify that on this 7th day of November 2022, I served the foregoing document by certified mail to the Defendant.

_____
Daniel J. O'Connell, Esq.